**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH L. AGOSTINI, Individually and As Co-Executor of the Estate of Jordyn Agostini, Deceased, et al., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION  NO. 2:11-cv-07172-MAM |
| PIPER AIRCRAFT CORPORATION, et al., | : : | |
| Defendants. | : | |

## O R D E R

    **AND NOW**, this      day of      , 2012, upon consideration of Plaintiffs' Motion to Remand for Lack of Federal Subject Matter Jurisdiction, and the Response of Defendants AVCO Corporation and Textron Inc. thereto, **IT IS HEREBY ORDERED AND DECREED** that Plaintiffs' Motion to Remand for Federal Lack of Subject Matter Jurisdiction is **DENIED**.


BY THE COURT:


_____
                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSEPH L. AGOSTINI, Individually and As      :
Co-Executor of the Estate of Jordyn Agostini, :
Deceased, et al.,                             :
                                              :
                      Plaintiffs,             :
                                              :
            v.                                :      CIVIL ACTION NO. 2:11-cv-07172-MAM
                                              :
PIPER AIRCRAFT CORPORATION, et al.,           :
                                              :
                      Defendants.             :

**RESPONSE OF DEFENDANTS AVCO CORPORATION AND
TEXTRON INC. TO PLAINTIFFS' MOTION TO REMAND
FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION**

Defendants AVCO Corporation, on behalf of its Lycoming Engines Division ("AVCO"),

and Textron Inc. ("Textron"), by and through their undersigned counsel, respond that, for the

reasons more particularly set forth in the accompanying Memorandum of Law in Opposition to

Plaintiffs' Motion to Remand for Lack of Federal Subject Matter Jurisdiction, which is

incorporated herein by reference, no Defendant is a citizen of Pennsylvania, there is complete

diversity of citizenship, there is no defect in the removal procedure, and this action should not be

remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

In opposition to the Plaintiffs' Motion to Remand for Lack of Federal Subject Matter

Jurisdiction, AVCO and Textron submit the following:

A.      Second Amended Complaint in *Aubrey v. AVCO Corporation*, October Term

2005, No. 1078, alleging in paragraph 4 that AVCO has "its principal place of business in Rhode

Island, and is also located at 52 [sic] Oliver Street, Williamsport, Pennsylvania 17701," attached

hereto as Exhibit "A".

B.      Verified Complaint in *Aubrey v. AVCO Corporation*, Index No. 05114146,

alleging in paragraph 3 that AVCO has "its designated principal place of business in New York

County, and is also located at 40 Westminster Street, Providence, Rhode Island, 02903," attached hereto as Exhibit "B".

      C.     Praecipe to Reinstate Complaint and Civil Action Complaint in *Pridgen v. Piper Aircraft Corporation*, July Term 2001, No. 0003838, alleging in paragraph 26 that AVCO has "its principal place of business in Connecticut, and does extensive business in the Commonwealth of Pennsylvania and in the City and County of Philadelphia," attached hereto as Exhibit "C".

      D.     Amended Complaint in *Zahora v. Precision Airmotive Corporation*, June Term 2006, No. 3858, alleging in paragraph 19 that AVCO has "its principal place of business in Connecticut," attached hereto as Exhibit "D".

      E.     Civil Action Complaint in *Robinson v. Hartzell Propeller, Inc.*, August Term 2001, No. 1168, alleging in paragraph 8 that AVCO has "its principal place of business in Connecticut," attached hereto as Exhibit "E".

      F.     Complaint in *Robinson v. Textron Lycoming Reciprocating Engine Division*, Civ. No. 03 CV 6529, alleging in paragraph 5 that AVCO has "its principal place of business in Connecticut," attached hereto as Exhibit "F".

      G.     Civil Cover Sheet and Complaint in *Schneider v. Textron Lycoming Reciprocating Engine Division, a Division of AVCO Corporation*, No. 3:94-CV-793-RPC, alleging in paragraph 2 that AVCO has "its principal place of business in Rhode Island," attached hereto as Exhibit "G".

      H.     Declaration of Ann T. Willaman Pursuant to 28 U.S.C. § 1746, attached hereto as Exhibit "H".

      I.     Answering Affirmation in Opposition to Lycoming Defendants' Motion to Dismiss in *Aubrey v. Avco Corporation*, Index No. 114146/2005, attached hereto as Exhibit "I".

J.      Notes of Testimony in *Pridgen v. Lycoming*, July Term 2001, Nos. 3838 and 4008, taken on April 6, 2010, attached hereto as Exhibit "J".

K.      Unaudited Balance Sheet and Statement of Operations for AVCO Corporation, a Subsidiary of Textron Inc., for the Fiscal Year Ended January 2, 2010, attached hereto as Exhibit "K".

L.      Plaintiffs' Response to Motion for Summary Judgment in *Berenholz v. Precision Airmotive Corp.*, March Term 2007, No. 1017, attached hereto as Exhibit "L".

M.      Philadelphia Bar Association Professional Guidance Committee Opinion 2009-02, attached hereto as Exhibit "M".

WHEREFORE, Defendants AVCO Corporation, on behalf of its Lycoming Engines Division, and Textron Inc. respectfully request that this Honorable Court deny Plaintiffs' Motion to Remand for Lack of Federal Subject Matter Jurisdiction in all respects, enter the form of Order attached hereto, and grant such other relief as may be just and appropriate under the circumstances.

Respectfully submitted,


/s/ James E. Robinson
James E. Robinson (PA 77515)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2073
jrobinson@cozen.com

Attorneys for Defendants AVCO Corporation, on behalf of its Lycoming Engines Division, and Textron Inc.


Date:  January 10, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH L. AGOSTINI, Individually and As Co-Executor of the Estate of Jordyn Agostini, Deceased, et al., | : : : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 2:11-cv-07172-MAM |
| | : | |
| PIPER AIRCRAFT CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO REMAND FOR LACK**
**OF FEDERAL SUBJECT MATTER JURISDICTION**

## I.      INTRODUCTION

Before this Court is Plaintiffs' Motion to Remand for Lack of Federal Subject Matter Jurisdiction ("the Motion to Remand"), seeking to remand this action to the Court of Common Pleas of Philadelphia County, Pennsylvania, ostensibly because of a claimed lack of subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1332(a)(1), 1332(c)(1), and 1332(c)(2) in that two of the Plaintiffs (and their decedent) and two of the Defendants allegedly are citizens of the Commonwealth of Pennsylvania.  There is, however, complete diversity of citizenship, this action was properly removed, and the Motion to Remand should be denied in all respects.

## II.     STATEMENT OF THE CASE

This civil action arises from an aircraft accident that occurred on November 11, 2010, in West Palm Beach, Florida, killing the pilot and three passengers.  Plaintiffs, the personal representatives of the estate of the pilot and of the estates of two of the passengers (collectively, "the Pilot and Passenger Plaintiffs"), commenced this action by the filing of a Civil Action Complaint ("the Complaint" or "Compl.") in the Court of Common Pleas of Philadelphia County, on November 10, 2011, 364 days after the aircraft accident in Florida.

One of the decedents appears to have been a resident of Pennsylvania (Jordyn Agostini) whereas the other two decedents appear to have been residents of Tennessee (Kyle Henegar and Kristopher Henegar).[1]   An estate was raised for Jordyn Agostini in Delaware County, Pennsylvania (Compl. ¶¶ 1, 2), and estates were raised in Philadelphia County, Pennsylvania, for the Henegar brothers (Compl. ¶ 4), even though they were not citizens or residents of the Commonwealth of Pennsylvania.

As to the so-called "Textron Defendants," some of whom are argued to be citizens of Pennsylvania, two of the three are Delaware corporations with their principal places of business outside Pennsylvania – one in Rhode Island and the other in Massachusetts.  The third is an unincorporated operating division and not a corporation.  As set forth in more detail in Part III, Textron Inc. ("Textron") is a Delaware corporation with its principal place of business in Rhode Island.  AVCO Corporation ("AVCO") is a Delaware corporation with its principal place of business in Massachusetts.  Lycoming Engines is an unincorporated division of AVCO and shares the citizenship of its corporate parent.

Textron removed this action on November 16, 2011.  (Doc. 1).  All of the Defendants have consented to removal.  (Doc. 19, 22, 26-1, 26-2, 26-3).

Although counsel for the Pilot and Passenger Plaintiffs have sued AVCO in other cases, alleging variously that AVCO's principal place of business is outside Pennsylvania – in Rhode Island, New York, and Connecticut (*e.g.*, Exhibits "A" through "G") – in this case, counsel argues that AVCO's principal place of business is in Lycoming County, Pennsylvania, where its division maintains an engine manufacturing facility.  The Pilot and Passenger Plaintiffs now

---

[1] Tennessee has a one-year statute of limitations applicable to wrongful death actions, *see* TENN. CODE ANN. § 28-3-104, which presumably is the reason why this suit in this case was filed 364 days after the accident.  *Cf. Yellen v. Teled[y]ne Cont'l Motors, Inc.*, No. 11-3325, 2011 U.S. Dist. LEXIS 140338, at *1 (E.D. Pa. Dec. 6, 2011) (action filed on behalf of estates of Tennessee decedents in May 2011 arising out of fatal aircraft accident on May 10, 2010).

move to remand (Doc. 31), ostensibly because the Agostinis and AVCO/Lycoming Engines are citizens of Pennsylvania.  The Motion to Remand is supported largely by documents culled from the internet or public record sources, although the Pilot and Passenger Plaintiffs also rely on a report from a private investigator they hired (Exhibit "33") (Doc. 31-41), who was dispatched to trespass on the premises of represented parties, who admits to having made a "covert videotape" (apparently on the premises), who admits to communicating with an employee of a represented party, who appears to have not disclosed his/her identity to an employee of a represented party, and who appears to have engaged in actions that may run afoul of the Pennsylvania Rules of Professional Conduct and/or the Massachusetts wiretap law.

Artful pleading and skullduggery aside, AVCO's principal place of business is in Massachusetts, there is complete diversity of citizenship, and the Motion to Remand should be denied in any and all respects.

## III.    STATEMENT OF FACTS

AVCO was incorporated in Delaware in 1929.  (See Declaration of Ann T. Willaman Pursuant to 28 U.S.C. § 1746 ("Willaman Decl.") ¶ 3, attached hereto as Exhibit "H").  Textron Inc. is the sole shareholder of AVCO, having acquired AVCO's stock in the winter of 1984-1985.  (Willaman Decl. ¶ 4) (Exhibit "H").  At the time Textron Inc. acquired AVCO's stock, AVCO maintained its headquarters and principal place of business in Greenwich, Connecticut.  (Willaman Decl. ¶ 13) (Exhibit "H").  AVCO thereafter "relocated its principal place of business to Providence, Rhode Island."  *AVCO Corp. v. Aetna Cas. & Sur. Co.*, 679 A.2d 323, 326 n.3 (R.I. 1996).  For the next quarter century, AVCO maintained its headquarters and its principal place of business in Providence, Rhode Island.[2]  Within the past year, in February 2011, AVCO

---

[2]    *See Powers v. Lycoming Engines*, 328 F. App'x 121, 126 n.2 (3d Cir. 2009) ("The record reveals that Lycoming Engines, though located in Pennsylvania, is a division of AVCO Corporation, a Delaware corporation with its principal place of business in Rhode Island"); *Wooton v. Pumpkin Air, Inc.*, 869 F.2d 848, 850 (5th Cir. 1989) ("AVCO and Textron are both

moved its headquarters and principal place of business from Providence, Rhode Island, to Wilmington, Massachusetts.  (Willaman Decl. ¶ 11) (Exhibit "H").

AVCO is a holding company primarily in the business of manufacturing products for the United States Government (military and homeland security functions) and commercial customers, including military vehicles, sensor fused weapons, electronic surveillance and related equipment and software, and reciprocating aircraft engines.  (Willaman Decl. ¶ 8) (Exhibit "H"). AVCO is currently qualified to transact business in Alabama, California, Connecticut, Delaware, Florida, Georgia, Kansas, Massachusetts, Michigan, New Jersey, New Mexico, New York, Ohio, Pennsylvania, Puerto Rico, Texas, and Tennessee.  (Willaman Decl. ¶ 9) (Exhibit "H"). AVCO's business units include AVCO Rhode Island (2002) Inc., Christine Realty Co., Inc., Overwatch Systems, Ltd., Textron Systems Corporation, and United Industrial Corporation. (Willaman Decl. ¶ 7) (Exhibit "H").   AVCO also has an unincorporated operating division, Lycoming Engines, which manufactures reciprocating (piston) aircraft engines.  (Willaman Decl. ¶ 6) (Exhibit "H").

AVCO has three Board members, W. Robert Kemp, Frederick M. Strader, and Robert J. Sullivan, each of whom is located in Wilmington, Massachusetts.  (Willaman Decl. ¶¶ 16, 17) (Exhibit "H").  Since Textron Inc. acquired AVCO in 1985, no Annual Meetings of the Board of Directors have been held in Williamsport, Pennsylvania.  (Willaman Decl. ¶ 19) (Exhibit "H").

---

Delaware corporations whose principal places of business are in Rhode Island"); *Powers v. Lycoming Engines*, No. 06-2993, 2011 U.S. Dist. LEXIS 12946, at *25 (E.D. Pa. Feb. 9, 2011) (Lycoming Engines "is a division of AVCO, a Delaware corporation with its principal place of business in Rhode Island") (Savage, J.);  *AVCO Corp. v. Progressive Steel Treating, Inc.*, No. 05 C 4364, 2005 U.S. Dist. LEXIS 22964, at *2 (N.D. Ill. Oct. 6, 2005) ("Avco is a Delaware Corporation with its principal place of business in Providence, Rhode Island"); *Brooker v. Textron, Inc.*, No. 02-2651, 2002 U.S. Dist. LEXIS 23503, at *2 (E.D. Pa. Nov. 20, 2002) ("Textron Inc. and AVCO are incorporated under the laws of Delaware and have principal places of business in Providence, Rhode Island").

The most recent Annual Meeting of the Board of Directors took place in Wilmington, Massachusetts, on May 10, 2011.  (Willaman Decl. ¶ 18) (Exhibit "H").

Eighteen Officers were elected at the most recent Annual Meeting of AVCO's Board of Directors.  (Willaman Decl. ¶ 21) (Exhibit "H").  One Officer has since resigned.  (Willaman Decl. ¶ 21) (Exhibit "H").  Eight of the seventeen current Officers (Carl G. Buzawa, John J. Cronin, Benjamin Hudson, W. Robert Kemp, Frederick M. Strader, Robert J. Sullivan, James Tarallo, and Ian Walsh) are located in Wilmington, Massachusetts.  (Willaman Decl. ¶ 22) (Exhibit "H").  Three of the current Officers (Patricia L. Elmer, James Cournoyer, and Ann T. Willaman) are located in Providence, Rhode Island.  (Willaman Decl. ¶ 23) (Exhibit "H").  Two of the current Officers (Donald Hairston and Alison Robinson) are located in Hunt Valley, Maryland.  (Willaman Decl. ¶ 25) (Exhibit "H").  Two of the current Officers (Michael Kraft and David Dawes) are located in Williamsport, Pennsylvania.  (Willaman Decl. ¶ 24) (Exhibit "H").  One current Officer (Tim Harrington) is located in Hurst (Fort Worth), Texas, and one current Officer (Kevin J. Cosgriff) is located in the District of Columbia.  (Willaman Decl. ¶¶ 26, 27) (Exhibit "H").

With the exception of the Vice President - Legal, who is based in Texas, and two of the Senior Vice Presidents, who are based in Maryland and the District of Columbia, AVCO's upper echelon Officers, including the President, the Executive Vice President and Chief Strategy Officer, the Senior Vice President, Treasurer and CFO, and the Vice President and Secretary, are all based in Massachusetts.  (Willaman Decl. ¶ 28) (Exhibit "H").  These senior corporate Officers have the responsibility to direct and develop plans, strategies, budgets, and goals, to oversee significant corporate decisions, and to set corporate policy.  (Willaman Decl. ¶ 29) (Exhibit "H").

Business decisions for AVCO and its subsidiaries, including major decisions for Lycoming Engines, must be approved by Frederick Strader or members of his senior staff. (Willaman Decl. ¶ 30) (Exhibit "H").  Business decisions requiring express approval by Mr. Strader and other members of his senior staff include the following types of transactions, among others, that exceed specified dollar amounts: 1) sales transactions; 2) capital expenditures; 3) leases; 4) purchase, sale, or licensing in or out of intellectual property; 5) supply chain commitments; 6) engagement of consultants; 7) all acquisitions or dispositions of businesses; 8) all appointments of distributors; and 9) certain human resources matters. (Willaman Decl. ¶ 30) (Exhibit "H").

AVCO's headquarters and administrative offices are located in Wilmington, Massachusetts, where its senior corporate management is based.  (Willaman Decl. ¶ 11) (Exhibit "H").  AVCO's corporate governance and financial books and records are maintained at AVCO's headquarters in Wilmington, Massachusetts.  (Willaman Decl. ¶ 10) (Exhibit "H").

## IV.   ARGUMENT

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court."  28 U.S.C. § 1441(a).  Federal district courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of costs and interest.  *Id.* § 1332(a)(1).  A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  *Id.* § 1332(c)(1).  The legal representative of the estate of a decedent is deemed to be a citizen of the same state as the decedent.  *Id.* § 1332(c)(2).  This Court has subject matter jurisdiction under section 1332(a)(1) of the Judicial Code in that there is complete diversity of citizenship and this action could have originally been brought in federal court.

**A.**     **Counsel For The Pilot And Passenger Plaintiffs Engage In Jurisdictional Manipulation**

While counsel for the Pilot and Passenger Plaintiffs allege in this case that AVCO's principal place of business is in Pennsylvania, they have alleged in pleadings in many other cases they have filed for many other personal injury plaintiffs (including citizens of Pennsylvania) that AVCO's principal place is outside, not inside, Pennsylvania.  (See Exhibits "A" to "G").  In other lawsuits, counsel for the Pilot and Passenger Plaintiffs have alleged that AVCO's principal place of business is in Rhode Island (*Aubrey* and *Schneider*) or in Rhode Island and New York (*Aubrey*) or in Connecticut (*Robinson*, *Robinson, Zahora*, and *Pridgen*).[3]  Indeed, counsel for the Pilot and Passenger Plaintiffs has filed at least one lawsuit (*Schneider*) **against AVCO in federal court in Pennsylvania on behalf of Pennsylvania residents,** invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332 and alleging that AVCO's principal place of business was in Rhode Island (Exhibit "G").

The allegations in those cases, when contrasted with the allegations herein, beg the question:  why do counsel for the Pilot and Passenger Plaintiffs so stridently advocate something else entirely in this case?  The answer perhaps may be found in the *Aubrey* case, where counsel for the Pilot and Passenger Plaintiffs filed two different lawsuits against AVCO, one in Pennsylvania and one in New York, on behalf of citizens of Delaware.  In the Pennsylvania action, counsel for the Pilot and Passenger Plaintiffs alleged AVCO's citizenship thusly:

> 4.      Defendant Avco Corporation, ("Avco") is a corporation organized and existing under the laws of the State of Delaware, is registered as a foreign corporation in Pennsylvania, *with its principal place of business in Rhode Island*, and is also located at 52 [sic] Oliver Street, Williamsport, Pennsylvania 17701.

---

[3] *Zahora, Pridgen*, one of the two *Aubrey* cases, and one of the two *Robinson* cases were filed in Philadelphia County by counsel for the Pilot and Passenger Plaintiffs.  In each of those cases, where counsel for the Pilot and Passenger Plaintiffs did **not** allege that AVCO had its principal place of business in Pennsylvania, there were defendants who shared the citizenship of the plaintiffs (including the *Aubrey* case, where the plaintiffs and AVCO were citizens of Delaware) and/or defendants who were Pennsylvania citizens, preventing removal.

(Exhibit "A" at 6, ¶ 4) (emphasis supplied).   In the New York action filed on behalf of the Delaware plaintiffs, counsel for the Pilot and Passenger Plaintiffs in this case alleged AVCO's citizenship as follows:

> 3.     Defendant Avco Corporation ("Avco") is  a corporation organized and existing under the laws of the State of Delaware, registered as a foreign corporation in New York state with its designated principal place of business in New York County, *and is also located at 40 Westminster Street, Providence, Rhode Island, 02903.*

(Exhibit "B" at 1-2, ¶ 3).  When AVCO and the other defendants to the New York *Aubrey* case challenged venue in New York County, counsel for the Pilot and Passenger Plaintiffs in this case submitted an Affirmation under oath, stating in part:

> 11.     The Lycoming Defendants have failed to meet their burden of establishing that the parties do not reside in New York, … and defendant Pen[ ] Yan[ ] conducts the majority of its activities in New York.  The Lycoming Defendants are registered foreign corporations in New York, and their designated principal place of business is New York County.  Thus they are residents of New York state, and New York County.  *Johanson v. J.B. Hunt Transport, Inc.*, 15 A.D. 3d, 268, 269, 790 N.Y.S. 2d 17 (1st Dept. 2005).

(Exhibit "I" at 4, ¶ 11).

In New York state court, AVCO apparently is a resident defendant in order to keep a case in New York County whereas, in this Court, AVCO apparently is a resident defendant in order to keep a case in Philadelphia County.  AVCO is no more a local defendant in Philadelphia County than it is in New York County, however.

And, moreover, while the Pilot and Passenger Plaintiffs vigorously protest in this case that AVCO does business only through Lycoming Engines, they have stipulated in another case, in Philadelphia County, that AVCO's net worth includes not only the assets of the operating division but also the assets of its many subsidiaries.  (A copy of the transcript reflecting counsel's stipulation is attached as Exhibit "J", and a copy of the Fiscal Year 2009 balance sheet reflecting the consolidated results of AVCO, "includ[ing] its unincorporated operating division,

Lycoming Engines, and 5 wholly owned subsidiaries – Textron Systems Corporation, United Industrial Corporation, Overwatch Systems of Virginia Inc., Avco Rhode Island (2002) Inc. and Textron Systems Rhode Island (2001) Inc.," upon which the stipulation is based, is attached as Exhibit "K").

The location of AVCO's principal place of business has consistently been held to be located outside Pennsylvania, *e.g., Powers v. Lycoming Engines*, 328 F. App'x at 126 n.2, 127 (reversing choice of law determination made by the district court that was based, in part, on Lycoming Engines' location in Pennsylvania when the corporate parent was a Delaware corporation with its principal place of business in Rhode Island), and is disputed only by aviation personal injury plaintiffs looking to nest in Philadelphia County.  Emboldened by this Court's contrary principal place of business ruling in *Stewart v. Precision Airmotive Corp.*, No. 07-1610, 2007 U.S. Dist. LEXIS 74194 (E.D. Pa. Oct. 3, 2007) (McLaughlin, J.), applying a test since overruled by the United States Supreme Court, the Pilot and Passenger Plaintiffs engage in blatant jurisdictional manipulation that cannot, and should not, be countenanced.[4]

### B.    The Court Should Not Consider Any Proffer Potentially Violative Of The Rules Of Professional Conduct

Included among the thirty-six exhibits to the Memorandum of Law in Support of Plaintiffs' Motion for Remand ("their Memorandum of Law" or "Pls.' Mem.")  is a report (Exhibit "33") from a private investigator hired by counsel for the Pilot and Passenger Plaintiffs, whose self-described assignment was as follows:

---

[4] To be sure, the United States Court of Appeals for the Third Circuit has held that allegations of citizenship in the pleadings are not dispositive of the issue of a corporation's principal place of business.  *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 293 (3d Cir. 1998) ("a party may not confer or defeat jurisdiction by mere pleading").  As this Court admonished in *Stewart v. Precision Airmotive*, however, such contrary positions taken by counsel regarding citizenship should be brought to the Court's attention in the briefing on a motion for remand in the first instance.  See Order entered Nov. 13, 2007 in *Stewart v. Precision Airmotive Corp.*, No. 07-1610 (Doc. 33 at 2 in that case) (McLaughlin, J.).

> On 11/18/11, Lajoie Investigations, Inc. received this assignment from Lisa Turowski of Wolk Law Firm.  It was requested that we proceed to Avco Corporation, 201 Lowell Street, Wilmington, MA, and obtain photographs/videotape of Avco Corporation, focusing on any business directory **in the building**; sign on the door; and any signs outside.

(Pls.' Mem. Ex. 33 at 1) (Doc. 31-41 at 2) (emphasis supplied).  In discharging the assignment given to him/her by the law firm representing the Pilot and Passenger Plaintiffs, a private investigator acting on their behalf entered private property, spoke to an unnamed individual whom the investigator identified as an employee of Textron Systems Corporation ("Textron Systems") – a subsidiary of AVCO also located at the same address in Wilmington, Massachusetts – and apparently obtained "covert videotape" on the premises and/or inside the building.  (Pls. Mem. Ex. 33 at 2) (Doc. 31-41 at 3).  In other words, an investigator was dispatched with specific instructions to trespass, perhaps violating Massachusetts' wiretap statute, as well as the Pennsylvania Rules of Professional Conduct, in the process of completing the assignment given to him/her by the law firm representing the Pilot and Passenger Plaintiffs.

AVCO and Textron are attempting to determine the employee of Textron Systems who apparently spoke to the unidentified investigator at approximately 3:00 p.m. on the Monday before Thanksgiving.  AVCO and Textron reserve the right to seek affirmative relief from this Court upon the completion of their investigation into a security breach at a facility engaged in the business of supporting homeland security and U.S. military operations.  In the meantime, however, it appears that one or more rules contained in the Pennsylvania Rules of Professional Conduct may have been violated on November 21, 2011.

For instance, the Pennsylvania Rules of Professional Conduct admonish in no uncertain terms that:

> In representing a client, a lawyer **shall not** communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

- 10 -

PA. R. PROF'L COND. 4.2 (emphasis supplied).   Instructive on the scope of Rule 4.2 is this Court's decision in *Penda Corp. v. STK, LLC*,  wherein a paralegal for the law firm representing the plaintiff was instructed to call the defendant to determine if the defendant's products could be purchased in Philadelphia.   Nos. 03-5578, 03-6240, 2004 U.S. Dist. LEXIS 13577, at *7 (E.D. Pa. July 16, 2004) (McLaughlin, J.).   The paralegal in that case made the phone call to confirm an allegation in the complaint regarding venue.   *Id.* at *15.   During her call to the corporate defendant, the paralegal spoke with a customer service manager.   *Id.* at *7.

While examining the applicability of Pennsylvania's Rule 4.2 to organizations, this Court found that the customer service manager did not have the required level of managerial responsibility.   *Id.* at *13.   This Court nevertheless concluded that the customer service manager could make statements that could be used against the defendant because he was working as an employee of the defendant when making the statement, the statement was within the scope of his employment, and the plaintiff relied on the statement.   *Id.*   Counsel therefore violated Rule 4.2 when the paralegal made the contact.   *Id.* at *15.

Another decision, which is both instructive and directly on point, is *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, wherein a private investigator, who was hired by counsel, went to the premises of an adverse party and spoke to that party's salesman.   347 F.3d 693, 698 (8th Cir. 2003).   The Eighth Circuit concluded that the communications with the salesman "were intended to elicit admissions to be used against" the salesman's employer.   *Id.*   Ultimately, the court recognized that where "attorneys elicit specific admissions from an opponent's low-level employees that the attorneys know would be advised against by the employer's counsel, we have no doubt that the ethical considerations in Rule 4.2 apply."   *Id.* (applying Model Rule 4.2).[5]

---

[5] The comments to Pennsylvania's Rule 4.2 were amended after *Penda* and *Midwest Motor Sports* were decided.   Comment [7] now reads:

Although the particulars of the communications by the private investigator are as-yet unknown, counsel for the Pilot and Passenger Plaintiffs, through their investigator, communicated with at least one employee of a represented party.  The identity of the person with whom the investigator communicated and that individual's actual title are unknown.  While the investigator's report identifies that person as a "receptionist" for Textron Systems, the employee very well could be someone who falls under the reach of Rule 4.2.

Suffice it to say, however, that counsel for the Pilot and Passenger Plaintiffs, through their investigator, elicited statements from a represented party's employee regarding issues relevant to this and other cases in which counsel are involved, and are now attempting to use such statements as admissions.  Textron Systems is not a party to this litigation but it is a party represented by counsel in other related litigation in this Court and in Philadelphia County.  Indeed, counsel for the Pilot and Passenger Plaintiffs have sued Textron Systems in currently pending litigation, *Berenholz v. Precision Airmotive LLC*, March Term 2007, No. 1017 (CCP Phila. Cty.), in which counsel opposed a motion for summary judgment by Textron Systems and Textron, stating on page 3 of their opposing Memorandum of Law that "Avco conducts no real business but rather exists as an on-paper holding company to shield its parent, Textron, Inc. [sic], from liabilities for what Textron, Inc. [sic] refers to as the 'Textron Systems' segment of its

---

In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

PA. R. PROF. COND. 4.2, cmt. [7].  The comments no longer contain the portion of the comments which states that the Rule prohibits communications with persons "whose statement may constitute an admission on the part of the organization."  *See Penda Corp.*, 2004 U.S. Dist. LEXIS 13577, at *12 (discussing old comments).  These changes, however, are inapposite to the present situation.

operations."   (See Exhibit "L" at p.3 of the Memorandum of Law in the *Berenholz* case).

Counsel for the Pilot and Passenger Plaintiffs are, and certainly should have been, well aware

that AVCO, Textron Systems, and Textron are represented parties in that counsel for the Pilot

and Passenger Plaintiffs are currently involved in litigation against AVCO, Textron Systems, and

Textron, making assertions virtually identical to those asserted in the Motion to Remand.

As in *Penda Corp.* and *Midwest Motor Sports*, by using an investigator as a conduit to

elicit an admission against an unknown employee of a represented party, counsel for the Pilot

and Passenger Plaintiffs may have violated Rule 4.2 in their November 21, 2011

communications.   Even if Rule 4.2 was not violated, the investigator's apparent deceit, which

would be imputed to counsel by virtue of their engagement of the investigator to perform the

assignment, violates Rule 8.4, which states that "[i]t is professional misconduct for a lawyer to: .

. . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  PA. R. PROF'L

COND. 8.4(c).

In *Midwest Motor Sports*, the Eighth Circuit found a violation of 8.4(c) based on conduct

similar to that apparently engaged in here.[6]  Counsel in that case retained a private investigator to

visit an adverse party's showroom and determine what products salespersons were promoting

and what products were on display in the adverse party's showroom.   347 F.3d at 695.   The

private investigator entered the showroom a number of times, posing as a customer, and spoke to

a salesman.   *Id.* at 696.   Like the investigator in this case, the private investigator in *Midwest*

*Motor Sports* wore a recording device.   *Id.* at 695.   The court concluded that the private

investigator's communications "took place under false and misleading pretenses" in that the

private investigator "pose[d] as a customer [and] wore a hidden device that secretly recorded his

---

[6] The opinion in *Midwest Motor Sports* was based upon Model Rule 8.4(c), which is virtually the same as Pennsylvania's Rule 8.4(c).   The Model Rule, as analyzed in *Midwest Motor Sports*, provides, *inter alia*, that a lawyer cannot engage in "conduct involving dishonesty, fraud, deceit or misrepresentation."  347 F.3d at 699.

conversations . . . ."  *Id.* at 699.   Though the state in which the private investigator used the recording device, unlike Massachusetts, required the consent of only one party for lawful recording, the court noted that the "ABA suggests that nonconsensual recordings be prohibited 'where [the recording] is accompanied by other circumstances that make it unethical.'"   *Id.* (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001)).   As the Eighth Circuit counseled, "conduct that is legal may not be ethical."   *Id.* at 699.   Ultimately, the *Midwest Motor Sports* court determined that the private investigator's "undercover ruse to elicit damaging admissions" fell within the scope of Rule 8.4(c).   *Id.* at 700.

The same potential ethical issues that concerned the Eight Circuit in *Midwest Motor Sports* are implicated here.   The law firm representing the Pilot and Passenger Estates directed the investigator to go onto the premises of AVCO and Textron Systems and instructed their private investigator to obtain photographs and videotape of private property, including the inside of the building.   (Pls.' Mem. Ex. 33 at 1) (Doc. 31-41 at 2).   At this point, the extent or nature of the pretenses the investigator employed to enter the building is unknown; however, the facility located at 201 Lowell Street, where the investigator was directed to investigate, is a secure building where visitors have to identify themselves[7] and is not a business that is open to the public, such as a department store or a restaurant.

The apparent misrepresentation and dishonesty perpetrated by the investigator, acting under the direction of counsel for the Pilot and Passenger Plaintiffs, is even more egregious when coupled with the fact that the investigator employed the use of a hidden recording device.   Aside

---

[7] Camera phones and other recording devices are not permitted on the premises given the restrictions on visitor access imposed by the National Industrial Security Program Operating Manual ("NISPOM"), which also requires procedures to be in place to ensure positive identification of visitors.  *See generally* http://www.fas.org/sgp/library/nispom.htm (last visited Jan. 10, 2012).  Moreover, it is unclear as to whether the  recording device used by the private investigator also recorded audio.  If it did, there may be further legality issues associated with the Massachusetts wiretapping law.  *See* MASS. GEN. LAWS ch. 272, § 99.

from any potential illegality surrounding the use of the recording device, as *Midwest Motor Sports* teaches, the legality of an act does not mean that it was ethical.  The investigator likely did not inform anyone with whom he/she spoke that there was a hidden recording device, the investigator likely did not disclose his/her true identity, and the investigator likely did not offer the truth of his/her purpose and motives in entering the facility and asking questions of employee(s) therein.[8]

The Philadelphia Bar Association Professional Guidance Committee mentioned a nearly identical scenario in one of its ethics opinions.   The Committee was confronted with a question regarding whether it would violate any ethical rules by asking a third person to "friend request" a witness on a social networking website, without revealing that the third person is associated with the lawyer.  (*See* Philadelphia Bar Association Professional Guidance Committee Opinion 2009-02, attached hereto as Exhibit "M", at p.1).  The Committee advised an inquiring attorney that the proposed conduct would violate Rule 8.4(c) because the third party was planning to be deceptive in "omit[ting] a highly material fact" that the third party was associated with the lawyer and was planning on sharing information obtained with the lawyer for use in litigation. *Id.* at p.3.   The third party's target might not allow access to her website if she knew the third party's true intention.  *Id.*  The inquiring attorney likened this conduct to videotaping a personal injury plaintiff to determine whether the plaintiff's allegations are accurate.  *Id.*   Disagreeing, the Committee admonished:

---

[8] In addition to possible violations of Rules 4.2 and 8.4(c), Rule 4.1 may, too, have been violated.  Rule 4.1 provides that while representing a client, a lawyer "shall not knowingly:  (a) make a false statement of material fact or law to a third person . . . ."  PA. R. PROF'L COND. 4.1. In light of the secure nature of the facility, the private investigator may have had to make a false statement to gain access.  If so, the fact that it may have been the investigator who made misrepresentations is of no moment, as a lawyer may not "knowingly assist or induce another to" violate the Rules of Professional Conduct, "or do so through the acts of another . . . ."  PA. R. PROF'L COND. 8.4(a).

In the video situation, the videographer simply follows the subject and films him as he presents himself to the public. **The videographer does not have to ask to enter a private area to make the video. If he did, then similar issues would be confronted, as for example, if the videographer took a hidden camera and gained access to the inside of a house to make a video by presenting himself as a utility worker.**

*Id.* (emphasis supplied).

The information obtained by counsel for the Pilot and Passenger Plaintiffs through the potentially unethical and/or potentially unlawful acts of their investigator was not information unobtainable through other means. *See Midwest Motor Sports*, 347 F.3d at 699 (noting the information obtained unethically "could have been obtained properly through the use of formal discovery techniques"). Lack of subject matter jurisdiction is not waivable, and there was no need for counsel for the Pilot and Passenger Plaintiffs to rush to engage in any such misconduct to obtain this information. It is difficult to articulate what is more troubling, the fact that counsel for the Pilot and Passenger Plaintiffs sent an agent to trespass under false pretenses and to potentially violate Massachusetts law, or that they have so brazenly broadcast such misconduct. Reserving the right to seek appropriate relief upon completion of their investigation into the security breach,[9] AVCO and Textron request that, at the very least, any such evidence and the fruits thereof not be considered by the Court in resolving the Motion to Remand.

### C.     There Is Complete Diversity Of Citizenship

Turning now to the merits, the Motion to Remand does nothing more than regurgitate arguments made in *Stewart v. Precision Airmotive Corp.*, in which this Court decided the issue of AVCO's principal place of business based on a different record and applying a different test than the test that is applicable today, nearly four and one-half years later. 2007 U.S. Dist. LEXIS

---

[9] In dealing with a motion in another case arising from a comparable situation where communications with a represented party were taped by a private investigator acting on behalf of counsel, this Court indicated that it would want to hear the tape in its entirety and perhaps bring the investigator in to be interviewed by the Court. *See* Transcript of Oral Argument Before the Honorable Mary A. McLaughlin (Doc. 93 in that case), N.T. Dec. 10, 2009, at 18-19, 23, in *In re Radian Sec. Litig.*, No. 2:07-cv-3375-MAM.

74194 at *9 (determining AVCO's principal place of business to be in Pennsylvania). The Pilot and Passenger Plaintiffs devote much time and effort arguing that AVCO does no business other than that of the aircraft engine manufacturing division – even though their counsel has stipulated otherwise in another case – and merely pay lip service to the nerve center test articulated by the Supreme Court.

    1.    *Lycoming Engines Shares The Citizenship Of AVCO*

The Pilot and Passenger Plaintiffs make repeated references in their Memorandum of Law to Lycoming Engines being "headquartered" in Williamsport. (Pls.' Mem. at 2, 4, 14, 15, 16, 17) (Doc. 31 at 11, 13, 23, 24, 25, 26). The Pilot and Passenger Plaintiffs appear to reason that, because Lycoming Engines is located in Lycoming County, its corporate parent must be a citizen of Pennsylvania. They have it exactly backwards. The "citizenship of a corporation for diversity purposes cannot be based upon the location of an unincorporated division of a company." *Mears v. McNeil-PPC, Inc.*, No. 95-3820, 1995 U.S. Dist. LEXIS 17138, at *3 (E.D. Pa. Nov. 16, 1995).

Lycoming Engines is an unincorporated operating division of AVCO. (Willaman Decl. ¶ 6) (Exhibit "H"). "[A] corporation's unincorporated division is not an independent entity for diversity purposes." *Bruesewitz v. Wyeth Corp.*, No. 05-5994, 2006 U.S. Dist. LEXIS, at *9 n.1 (E.D. Pa. Mar. 27, 2006). Rather, "an unincorporated division has the same citizenship of the corporation of which it is a part." *Kotzo v. Vitamin World*, No. 91-3820, 1991 U.S. Dist. LEXIS 12728, at *2 (E.D. Pa. Sept. 11, 1991). "Defendant Lycoming Engines is a division of AVCO…, and as such it shares citizenship with that company." *3CG, LLC v. Textron, Inc.*, No. 4:11-cv-00880, 2011 U.S. Dist. LEXIS 91793, at *4 (M.D. Pa. Aug. 16, 2011) (holding that Lycoming Engines shares the Delaware and Massachusetts citizenship of AVCO for purposes of diversity jurisdiction).

A corporation's principal place of business under *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), is not the location of an unincorporated division, even a dominant division, but is the location of the corporation's nerve center or "brain."  The nerve center for AVCO is in the Commonwealth of Massachusetts, not the Commonwealth of Pennsylvania.

> 2.    *The Nerve Center Test Is The Governing Standard*

A corporation is deemed to be a citizen of any state in which it is incorporated and of the state where it maintains its principal place of business.  28 U.S.C. § 1332(c)(1).  In *Hertz*, the United States Supreme Court defined "principal place of business," a requirement Congress added in 1958, as the place where "the corporation's high level officers direct, control, and coordinate the corporation's activities . . . the corporation's 'nerve center.'"  130 S. Ct. at 1186.

The Supreme Court adopted the "nerve center" test to resolve conflicts among the circuits and in an effort to create a more uniform interpretation of the statutory language.  *Id.* at 1192. The "nerve center" test adopted by the Supreme Court explicitly rejected the "center of corporate activities" test that had been used by the United States Court of Appeals for the Third Circuit for nearly a half century.  *Id.*  (referring to *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960)).

The "nerve center" approach suggests a corporate "brain" from which high level executives issue decisions affecting the future of the company.  The "center of corporate activities" approach, however, leaves too many variables open to conflicting interpretations, including the relative importance of the locations of multiple plants, sales locations, locations of employees, and more.  *Id.* at 1194.  Conversely, the "nerve center" test "points courts in a single direction, towards the center of *overall* direction, control, and coordination."  *Id.* (emphasis added).  While the "center of corporate activities" test focuses on the "headquarters of a corporation's day-to-day activities," the "nerve center" test focuses on the place where high level

officers shape corporate policy.  *Hertz*, 130 S. Ct. at 1192.  The word "principal" requires a court to pick out the "main, prominent," or "leading" place.  *Id.*

In applying the nerve center test, courts do not (and should not) weigh corporate functions, assets, or revenues.  *Id.* at 1194.  The nerve center should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination.  *Id.* at 1192.  The Supreme Court cautioned, however, that "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."  *Id.* at 1194.  The question is simply stated: where are a company's top officers directing a company's business activities?  *Id.*

The answer to that question vis-à-vis AVCO is Massachusetts, where AVCO is headquartered, where all of its Directors and a plurality of its Officers are located, and where the actual center of direction, control, and coordination for its business activities is located.

3.      *AVCO's Principal Place Of Business Is In Wilmington, Massachusetts*

The United States Court of Appeals for the Fourth Circuit is the first federal appeals court to address the *Hertz* test in significant detail.  In circumstances factually similar to the record before this Court, the Fourth Circuit rejected the very arguments the Plaintiffs make here, concluding that a corporation's principal place of business was where its high level management was located, even though the corporate officers were also officers of related companies and worked out of a building owned by those same affiliated companies.

In *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, an energy company attempted to argue that its principal place of business was in West Virginia, destroying diversity jurisdiction.  636 F.3d 101, 103 (4th Cir. 2011).  The Fourth Circuit rejected the company's arguments, finding that the chief executive officer, chief operating officer, chief financial officer,

general counsel, and secretary of the company all maintained offices in Dearborn, Michigan.  *Id.* at 105.  Only the vice president and general manager maintained an office in West Virginia.  *Id.* Of particular relevance to the matter at bar, the company produced an affidavit showing that the officers in Michigan were responsible for "significant oversight and strategic decision-making . . . but the day-to-day operations" were conducted in West Virginia.  *Id.*  The Fourth Circuit concluded that these averments proved that the "direction and control" at the "heart" of the Supreme Court's *Hertz* decision was in Michigan rather than West Virginia.  *Id.*

So, too, here.  All of AVCO's Directors and most of the top level Officers responsible for significant oversight and strategic decision-making are in Massachusetts.  (Willaman Decl. ¶¶ 17, 21, 22, 28) (Exhibit "H").  Those senior corporate officers have the responsibility to direct and develop plans, strategies, budgets and goals, to oversee corporate decisions, and to set corporate policy.  (Willaman Decl. ¶ 29) (Exhibit "H").  Although division management has authorized signatories who execute contracts and other documents "in connection with any work, property, purchase, contract, service or production of any kind which may be directly or indirectly carried on or performed by the Lycoming Engines Division of the corporation," (Willaman Decl. Ex. 6 at 2) (Exhibit "H"), major decisions for the division must be approved by Frederick Strader (the President of AVCO) or members of his senior staff.  (Willaman Decl. ¶ 30) (Exhibit "H").

The division may be the public face of AVCO, at least to members of the flying public, but direction and control of the corporation, including the unincorporated division, are centralized in Wilmington, Massachusetts, which fixes that location as AVCO's principal place of business.  *See Hertz*, 130 S. Ct. at 1194 ("if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York").

4.      *The Pilot And Passenger Plaintiffs' Exhibits Are Not Controlling*

The Pilot and Passenger Plaintiffs support the Motion to Remand with thirty-six separate

exhibits.   (Doc. 31-1 to Doc. 31-50).   The majority of those exhibits are culled from the

worldwide web, with additional public record filings included.   The exhibits supporting the

Motion for Remand fall into the following general categories and/or are offered to support the

following general propositions:

- AVCO is a holding company that provides no goods or services of its own (*i.e.*,
  Exhibits "6", "7")

- AVCO does business and owns property in Pennsylvania (i.e., Exhibits "8", "9",
  "10", "11", "14", "15", "16", "17", "18", "19", "20", "21", "22", "23", "24")

- AVCO's unincorporated operating division manufactures piston aircraft engines in
  Pennsylvania (*i.e.*, Exhibits "13", "14")

- AVCO's division employs people who live and work in Pennsylvania (*i.e.*, Exhibits
  "11", "12")

Although none of these general propositions is in dispute, none of them is relevant to

*Hertz*, which teaches that corporate functions, assets, or revenues are not to be weighed in

applying the nerve center test.   130 S. Ct. at 1194.   Corporate functions, assets, and revenues are

exactly all that the Pilot and Passenger Plaintiffs argue.   These factors may have been relevant to

the overruled *Kelly* test, but they are not relevant to the *Hertz* test.

For instance, Pilot and Passenger Plaintiffs assert that "AVCO's president and treasurer

are officers of Textron Systems, a wholly owned subsidiary of AVCO's parent, Textron, [sic]

Inc."  (Pls.' Mem. at 13) (Doc. 31 at 22).   Textron Systems is actually a subsidiary of AVCO,

although that particular fact is irrelevant to the *Hertz* analysis.   *See Cent. W. Va. Energy Co.*, 636

F.3d at 107 ("the fact that [corporate officers] may also be engaged in affiliated companies' business activities is . . . of no import") (applying *Hertz*).

The Pilot and Passenger Plaintiffs complain that AVCO "owns no property in Massachusetts, (not even its own so-called 'headquarters')." (Pls.' Mem. at 15) (Doc. 31 at 24). Many businesses do not own the realty in which they are headquartered – among them the law firms representing the various parties herein, other than the law firm representing the Pilot and Passenger Plaintiffs. The fact that AVCO shares space with a subsidiary and shares officers and directors with its subsidiary is much ado about nothing relevant to this Court's inquiry under *Hertz*. *See Cent. W. Va. Energy Co.*, 636 F.3d at 107 ("It is undisputed that almost all of Severstal Wheeling's own officers work out of Dearborn, Michigan, as do some of its directors. That they may do so from a building owned by Severstal Wheeling's parent company is irrelevant.").

Many of the descriptions given for particular exhibits do not correspond to their actual content. Illustrative is the Pilot and Passenger Plaintiffs' characterization of their Exhibit 28, which they say supports the proposition that "Lycoming's sales managers are almost exclusively located in Williamsport, Pennsylvania, and not Massachusetts." (Pls.' Mem. at 9) (Doc. 31 at 18). AVCO agrees that the division has no sales managers in Massachusetts. AVCO does not agree that the division's sales managers are "almost exclusively located in Williamsport, Pennsylvania" or that the Lycoming Engines website page relied upon by the Pilot and Passenger Plaintiffs supports any such proposition. As Exhibit 28 reflects, the division has eight sales managers. (Doc. 32-28). Four of the division's sales managers are located in Williamsport (Marolous Cebulka, Oliver Leber, Jeffrey Schans, and Shannon Gearry), two are located in Texas (Wayne V. Gierke and Oscar Rodriguez), one in Spain (Ernesto Rodriguez), and one in New Zealand (Adrian McHardy). Four out of eight is neither exclusive nor "almost" so.

The Pilot and Passenger Plaintiffs represent that "Avco's only real business is through its Lycoming division" (Pls.' Mem. at 15) (Doc. 31 at 24), "Avco conducts virtually no business outside its Lycoming business in Pennsylvania" (Pls.' Mem. at 4) (Doc. 31 at 13), and other pronouncements of that ilk.[10]   AVCO is a holding company.   Holding companies are commonplace.   Berkshire Hathaway owns insurance companies, retailers, manufacturers, and other businesses but it does not issue insurance policies or manufacture goods.   United Airlines is wholly owned by a holding company, which does not fly passengers but is a viable business entity.

Textron is a holding company that, like AVCO, owns the stock of other companies.   The difference between the two is that Textron is publicly traded and AVCO is not.   What matters under *Hertz* is not whether a holding company has divisions but where its corporate brain is located.   AVCO and Textron have established, by competent evidence, that AVCO's nerve center is in Massachusetts.

While counsel for the Pilot and Passenger Plaintiffs may be taking the position outside Philadelphia County that AVCO does no business other than the division, counsel for the Pilot and Passenger Plaintiffs readily agree when inside Philadelphia County that the "assets, liabilities, and operations attributable to Avco" include Textron Systems and AVCO's other subsidiaries.   (See Exhibits "J" and "K").   Yet, corporate functions, assets, and revenues are not to be weighed in applying the nerve center test.   *Hertz*, 130 S. Ct. at 1194.   Regardless of the manner in which the Pilot and Passenger Plaintiffs choose to characterize AVCO's business, that business is centered, directed, controlled, and coordinated in Massachusetts.

---

[10] The reality is that Lycoming Engines accounts for just nine percent of the total revenues reflected on AVCO's balance sheet.   (Willaman Decl. ¶ 34) (Exhibit "H"). Nonetheless, even if the Pilot and Passenger Plaintiffs somehow were correct in arguing that AVCO only does business through the division, the nerve center for the corporation is in Massachusetts, and demonstrably so.

*4. The Pilot and Passenger Plaintiffs' Cases Are Not Controlling*

The Pilot and Passenger Plaintiffs argue that the outcome in this case is the same today under the *Hertz* test as it would have been under the overruled *Kelly* test. (Pls.' Mem. at 17) (Doc. 31 at 17). The *Kelly* test focused on the *location* of "day-to-day" activities of the company and management. *Kelly*, 284 F.2d at 854. The Supreme Court explicitly rejected the Third Circuit's former "center of corporate activities" test, explaining that such a test "seems doomed to failure," as it "depend[s] upon factors that courts cannot easily measure." *Hertz*, 130 S. Ct. at 1192. Instead, the focus of the *Hertz* test is *exactly* the place where policy-making directors guide the corporation's future – the corporate "brain." *Id.* at 1193-94. AVCO's corporate brain is in Massachusetts, and the two Eastern District of Pennsylvania cases on which the Pilot and Passenger Plaintiffs rely in arguing otherwise do not change this reality.

One of those cases, upon which the Pilot and Passenger Plaintiffs rely as support for their arguments that AVCO is "headquartered" in Pennsylvania, is *Stewart*, which followed and applied the *former* law of the Third Circuit in defining principal place of business prior to the Supreme Court's decision in *Hertz*. *Stewart*, 2007 U.S. Dist. LEXIS at *4-*5 (applying the center of corporate activities test). The Third Circuit's center of corporate activities test provided that the "headquarters of day-to-day corporate activity and management" determined a corporation's principal place of business. *Kelly*, 284 F.2d at 854. This test was expressly overruled by the Supreme Court in *Hertz*.

The Pilot and Passenger Plaintiffs likewise would have the Court believe that *Brewer v. Smithkline Beacham Corp.*, 774 F. Supp. 2d 721 (E.D. Pa. 2011), is analogous to the matter at bar. *Brewer*, however, required an analysis to determine the citizenship of a holding company that was the sole member of a limited liability company, whose citizenship is based upon the citizenship of its members. *Id.* at 722, 725. The limited liability company's members possessed

ultimate control over the company, and in turn delegated rights and powers to manage and control the business to directors and officers. *Id.* at 728. Top-level officers who had decision-making authority granted to them by the holding company all were located in Philadelphia. The limited liability company had no office anywhere else from which direction or control could emanate. *Id.* The directors and officers who made operational and business decisions were located in Philadelphia; thus the nerve center of the company was there. *Id.*

*Brewer* highlights the importance of focusing on the place from where operations are directed, controlled, and coordinated. *Id.* at 729. AVCO has made that showing herein. Simply put, AVCO is the "brain" behind its Lycoming Engines division, and the Supreme Court directs courts to examine the "brain" from which direction and control emanates. *Hertz*, 130 S. Ct. at 1193. Unlike *Brewer*, where all of the top officers made decisions from Philadelphia, none of AVCO's top-level Officers are located in Williamsport and only two of its seventeen current Officers are situate in Lycoming County. Unlike *Brewer*, where the sole member in Wilmington, Delaware had no managerial control, AVCO has managerial control of its corporate operations. There is simply nothing analogous about the *Brewer* case.[11]

### D.    Jurisdictional Discovery Is Unnecessary

Defendants bear the burden of proving the existence of jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and that burden has been successfully shouldered here. In the Third Circuit, the proof upon which courts most rely is a sworn affidavit indicating a corporation's place of incorporation and its principal place of business. *See*, *e.g.*, *R.R. Constr. Co. of S. Jersey, Inc. v. A.P. Constr., Inc.*, Civ. A. No. 10-6190, 2011 U.S. Dist.

---

[11] This Court reached a different conclusion than Judge Savage regarding the nerve center of GlaxoSmithKline LLC, holding in another case that its principal place of business is in Delaware. *White v. SmithKlineBeecham Corp.*, No. 10-2141, 2010 U.S. Dist. LEXIS 79520, at *9 (E.D. Pa. Aug. 6, 2010) (McLaughlin, J.).

LEXIS 79471, at *8 (D.N.J. July 21, 2011) (relying on an affidavit from the president and chief operating officer of a corporation to establish principal place of business); *Monica v. Accurate Lift Truck*, No. 10-730, 2010 U.S. Dist. LEXIS 40480, at *4 (E.D. Pa. Apr. 20, 2010) (relying on affidavit of company Vice President to determine principal place of business); *Laufen Int'l, Inc. v. Larry J. Flint Floor & Wall Covering Co.,* No. 2:10-cv-199, 2010 U.S. Dist. LEXIS 35049, at *9-*10 (W.D. Pa. Apr. 9, 2010) (finding an affidavit sufficient to determine the nerve center of a corporation).  The Third Circuit has made clear, post-*Hertz*, that the issue of a corporation's principal place of business properly may be resolved on affidavits.  *See Brooks-McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 219-20 (3d Cir. 2010) (upholding finding of complete diversity and explaining that the District Court was permitted to rely on the corporation's affidavit regarding its places of incorporation and principal place of business).

There is complete diversity of citizenship and the amount in controversy exceeds the jurisdictional amount.   The vague, generic request for leave to conduct "jurisdictional discovery," including "site-inspection" discovery – which counsel for the Pilot and Passenger Plaintiffs already have done, albeit "covert[ly]" – is out of all proportion to the issues raised by the Motion to Remand.  As the Supreme Court admonished in *Hertz*, in explaining some of the reasons for adopting the "relatively straightforward" test that it did:

> Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims.  *Cf. Navarro Savings Assn. v. Lee, 446 U.S. 458, 464, n. 13, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980)*.  Complex tests produce appeals and reversals, encourage gamesmanship, and, again, diminish the likelihood that results and settlements will reflect a claims legal and factual merits.  Judicial resources too are at stake.  Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.  *Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)* (citing *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999))*.  So courts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case.  *Arbaugh, supra, at 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097.*

130 S. Ct. at 1193.

The Pilot and Passenger Plaintiffs chose to cobble together exhibits that, even when read in the light most favorable to them, establish or tend to establish that AVCO does business in Pennsylvania through its reciprocating aircraft engines division.  Having argued *Kelly*, not *Hertz*, they now invite the Court to defer the threshold issue whether the action remains in the Eastern District of Pennsylvania or is remanded to allow them unspecified discovery.  The Court is respectfully requested to resolve the issue forthwith and to decline the Pilot and Passenger Plaintiffs' request to "eat[ ] up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."  *Hertz*, 130 S. Ct. at 1193.

## V.    CONCLUSION

Massachusetts is where high level Officers shape corporate policy.  Massachusetts is AVCO's nerve center and the location of its principal place of business.  There is complete diversity of citizenship and federal subject matter jurisdiction over this controversy.  The Motion to Remand should be denied in all respects.

Respectfully submitted,

*/s/ James E. Robinson*
James E. Robinson (PA 77515)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2073
jrobinson@cozen.com

Attorneys for Defendants AVCO Corporation,
on behalf of its Lycoming Engines Division,
Textron Inc., and Textron Systems Corporation

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 10, 2012, a copy of the foregoing **Response of Defendants AVCO Corporation and Textron Inc. to Plaintiffs' Motion to Remand for Lack of Federal Subject Matter Jurisdiction** was served upon all counsel of record through the Court's ECF system.

/s/ James E. Robinson
James E. Robinson (PA 77515)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2073
jrobinson@cozen.com

Attorneys for Defendants AVCO Corporation,
on behalf of its Lycoming Engines Division, and
Textron Inc.